To Be Submitted By:
KIRSTEN A. RAPPLEYEA
Assistant District Attorney
Of Counsel

STATE OF NEW YORK

SUPREME COURT : APPELLATE DIVISION

SECOND JUDICIAL DEPARTMENT

---

THE PEOPLE OF THE STATE OF NEW YORK,

Respondent,

- against -

CRAIG E. GABBIDON,

Defendant-Appellant.

APPELLATE
DIVISION
DOCKET
NO. 2015-00872

DUTCHESS
COUNTY IND.
NO. (S)121/2013

---

RESPONDENT'S BRIEF

---

WILLIAM V. GRADY
Dutchess County District Attorney
Attorney for Respondent
236 Main Street
Poughkeepsie, New York 12601
(845) 486-2300

By:   KIRSTEN A. RAPPLEYEA
Assistant District Attorney
Of Counsel

## TABLE OF CONTENTS

PRELIMINARY STATEMENT.................................................. 1

FACTS...................................................... 1
A. Introduction.......................................... 1
B. Defendant's Guilty Plea........................... 2
C. Defendant's Motion to Withdraw his Guilty Plea.............. 9
D. Defendant's Sentencing........................... 10

ARGUMENT
POINT I................................................. 14
THE COUNTY COURT PROPERLY DENIED
APPELLANT'S MOTION TO WITHDRAW HIS GUILTY
PLEA
(Answering Appellant's Point I)

POINT II................................................. 19
APPELLANT'S RECEIVED THE EFFECTIVE
ASSISTANCE OF COUNSEL
(Answering Appellant's Point II)

POINT III................................................. 22
APPELLANT'S AGREED UPON SENTENCE WAS
MOST APPROPRIATE
(Answering Appellant's Point III)

CONCLUSION......................................... 26

CERTIFICATE OF COMPLIANCE.......................... 27

## PRELIMINARY STATEMENT

This is an appeal by defendant/appellant Craig E. Gabiddon from a judgment of the County Court of Dutchess County (Greller, J.) dated December 23, 2014, convicting him upon his plea of guilty, of the Class B Violent Felony of Criminal Sexual Act in the First Degree in violation of Penal Law ("PL") §130.50 (2). Appellant was sentenced to a determinate term of fifteen (15) years followed by ten (10) years of post release supervision. A full order of protection was issued on behalf of the victim.

No stay of execution was ordered.

## FACTS

A.   Introduction

By Dutchess County Superseding Indictment No. 121/2013 dated January 22, 2014, defendant was accused of committing the following crimes: the Class B Violent Felony of Criminal Sexual Act in the First Degree in violation of PL §130.50 (2), the Class B Violent Felony of Rape in the First Degree in violation of PL §130.35 (2), two counts of the Class E Felony of Criminal Sexual Act in the Third Degree in violation of PL §130.40 (2) and the Class A Misdemeanor of Endangering the Welfare of a Child in violation of PL §260.10 (1).

The Bill of Particulars alleged on March 3, 2013 between the hours of 2:00 p.m. and 8:00 p.m. at 4171 Albany Post Road in Hyde Park, New York, defendant purchased alcohol for YR and her friend at a liquor Store in the City of Poughkeepsie. YR became extremely intoxicated from the alcohol defendant had purchased for her. Defendant placed YR and her friend in his truck and drove them to a motel in Hyde Park. Defendant carried YR into the motel as she was too intoxicated to walk. While in the motel, defendant removed YR's clothing and subjected her to contact between his penis and her anus, her vagina and her mouth. He did so for his own sexual gratification. YR was incapable of consenting to these acts because she was less than seventeen years old, having been born on November 7, 1996, and because she was physically helpless because she was intoxicated.

B.    Defendant's Guilty Plea

Defendant and his attorney, Assistant Public Defender Susan Mungavin, appeared in County Court on June 11, 2014 for a combined *Huntley/Sandoval* Hearing. At the outset of the proceeding, Ms. Mungavin informed the Court that defendant wished to withdraw his previously entered plea of not guilty to Superseding Indictment No. 121/2013 and instead plead guilty to count one of that indictment charging him with

Criminal Sexual Act in the Degree. P2[1] Defendant's plea would cover the remaining four counts of that indictment. P2-4 Defendant stated that he understood this to be the agreement. P3-4

Defendant stated that he was pleading guilty to Criminal Sexual Act in the First Degree in violation of PL §130.50 (2). P6 Defendant admitted that on March 3, 2013, in the Town of Hyde Park, he engaged in anal sexual conduct with YR, who was incapable of consent by reason of being physically helpless. P4

Before the Court accepted defendant's guilty plea, it asked defendant some questions to make sure that he understood the proceedings and that he was pleading guilty voluntarily. P4-5 Defendant stated that he understood that instead of pleading guilty, he could have a jury trial. He also understood that by pleading guilty, he was waiving his right to the Huntley Hearing that was scheduled to take place today. P5

Defendant was instructed that at a jury trial, the parties would select a jury by asking potential jurors questions. The parties would be able to excuse jurors from serving and eventually twelve jurors would be chosen. Defendant understood. P5

---

[1] Numbers preceded by the designation "P" refer to the pages of the transcript of the plea proceedings held in the Dutchess County Court (Greller, J.) on June 11, 2014.

Defendant understood that the People have an obligation to prove each and every element of the crimes charged against him beyond a reasonable doubt. The prosecutor would attempt to do this by calling witnesses and offering whatever other evidence there might be. Defense counsel would be able to cross-examine the witnesses and challenge the admissibility of any evidence. At the end of the People's case, defense counsel could argue to the jury that the People did not prove his guilt beyond a reasonable doubt, or instead he could present witnesses and evidence on defendant's behalf. P5-7 If those witnesses were reluctant to come to court, defense counsel would issue a subpoena, which is a court order requiring their presence in court. Defendant understood. P7

The Court told defendant that if he chose to testify at the trial, that was his right. If he chose not to testify, the jury could not hold that fact against him because he has a constitutional right to remain silent and not incriminate himself. He has no obligation to prove anything at his trial. Defendant stated that he understood. P7

At the end of the trial, after defendant's attorney argued to the jury on his behalf, he could not be convicted of the crime charged or any related crime unless all twelve jurors agreed that his guilt had been proven beyond a reasonable doubt. Defendant stated that he understood. P7-8

4

Instead of a jury trial, defendant could elect a nonjury trial that would take place in the same manner as a jury trial except the Judge would decide if his guilt had been proven beyond a reasonable doubt. P8

Defendant understood that by pleading guilty, defendant was giving up his right to a trial, his right to remain silent and his right not to incriminate himself with respect to the instant charges. P8 Defendant understood. P8 Defendant stated that he had discussed his guilty plea with Ms. Mungavin and her associate, Mr. Rosen and the details of what occurred in March of 2013. Defendant and his attorneys had discussed the factual and legal issues in defendant's case. P8-9 Defendant had ample time to talk to his attorneys and he was satisfied with their advice and services. P9 Based on defendant's own knowledge as to what happened as well as his conversations with defense counsel, defendant concluded that it was in his best legal interest to plead guilty today. P9

Defendant stated he was pleading guilty voluntarily. P9 He has not been threatened or forced or pressured by anyone into pleading guilty. P9-10 During the past six months, he has not been treated for any alcohol or drug abuse or undergone any counseling for any psychological or emotional problems. He is presently taking blood pressure medication on a

daily basis. He took his medication today. P10 Defendant told the Court
that he is clear-headed and understands everything that is happening. P11

The Court told defendant that in addition to the sentence to be
imposed, a felony conviction has other consequences. For example, if he
were convicted of another felony within ten years, the sentence for that
future felony would be more severe as a result of the instant conviction.
Defendant would also lose certain civil rights and a felony conviction is a
bar to obtaining certain licenses. Defendant understood. P11-12

Defendant stated he was a citizen of Jamaica. P12 He understood
there were collateral consequences to his plea. Ms. Mungavin informed the
Court that she had explained to defendant a number of times that since he
is not a United States citizen, and this is a crime of moral turpitude, it is
likely that he would be deported when he is released from prison. P12 Ms.
Mungavin also spoke to defendant's family about this consequence of his
guilty plea. P13 Defendant stated that he understood. P13

The Court reiterated to defendant that by pleading guilty to the
crime of Criminal Sexual Act in the First Degree, he would be deported. It
is a crime of moral turpitude and once he has served his prison sentence,
he will be deported. P13 The Court asked defendant if he understood, and
defendant replied, "Yes, sir." P13 The Court asked defendant whether he

6

still wished to plead guilty, knowing he will be deported. Defendant replied, "Yes." P13       Defendant understood that the maximum penalty for Criminal Sexual Act in the First is twenty-five years in prison. P13 The Court further informed defendant that the maximum penalty for the second count of the superseding indictment charging him with Rape in the First Degree, is also twenty-five years. P13-14 The Court told defendant that due to the nature of the allegations in the superseding indictment, he could be sentenced consecutively. Defendant stated that he understood. P14

The Court stated that defense counsel and the prosecutor have had many conferences and had a conference with the Court earlier in the day. It was the Court's understanding that it would cap defendant's sentence at fifteen years in prison followed by post release supervision. P14 Defendant would also be required to register as a sex offender. Defendant understood. P14-15

The Court stated that it would impose the agreed upon sentence unless, after reading defendant's presentence investigation report, it learned something that prevented it from imposing that sentence. If that happens, the Court will allow defendant to withdraw his guilty plea and they would begin anew. Defendant understood. P15

The Court further stated that if between now and sentencing,

defendant (1) failed to cooperate with or misled or lied to the probation

officer assigned to interview him for the pre-sentence report, or (2)

committed a new offense or was arrested for a new offense, or (3)

deliberately failed to appear for sentencing, the Court would not allow

defendant to withdraw his guilty plea and he would be subject to a more

severe sentence. P16 Defendant stated that he understood. Defendant had

no questions and understood everything the Court had said so far. P16

The defendant had no questions for the Court or his attorney. P16

Defendant pleaded guilty to Criminal Sexual Act in the First

Degree. He told the Court that during the day on March 3, 2013, in the

Town of Hyde Park, he engaged in anal sexual conduct with YR, a person

being physically helpless. P16-17 Defendant stated that there was contact

between his penis and YR's anus. At the time defendant committed this

crime, YR was unconscious due to the consumption of alcohol. P17

Defendant had no permission or authority to do this and YR did not

consent. P17-18

The Court found that defendant had pleaded guilty knowingly and

voluntarily and had admitted the essential elements of the crime of

8

Criminal Sexual Contact in the First Degree. P18 The matter was
adjourned for sentencing.

C.     Defendant's Motion to Withdraw his Guilty Plea

By letter dated June 16, 2014, defendant wrote to the Court seeking
to withdraw his guilty plea and requesting a new attorney. Pursuant to
defendant's request, the Court relieved the Public Defender's Office from
representing defendant and appointed Eric S. Shiller to represent
defendant.

By Notice of Motion dated September 10, 2014, defendant moved to
withdraw his guilty plea of June 11, 2014. In his affidavit submitted in
support of that motion, defendant alleged that Assistant Public Defender
Susan Mungavin "pressured and badgered" him to accept the People's
offer and to plead guilty. He claimed he did not have a clear mind at the
time he pleaded guilty and that he was coerced. Defendant further argued
that he was not guilty of the charge and that he would not have waived his
right to the *Huntley* Hearing and his right to a trial but for Ms. Mungavin's
extreme pressure on him. The People filed an Affirmation in Answer to
Defendant's motion and Mr. Shiller filed a Reply Affirmation on October
13, 2014.

9

By Decision and Order dated October 15, 2014, the County Court denied defendant's motion. The Court found that the plea minutes established defendant's guilty plea was knowingly and voluntarily entered and that defendant stated he was satisfied with his attorney's representation and advice. The Court further stated that defendant's allegations of coercion are belied by the record during the plea allocution. Moreover, defendant's assertion of innocence is belied by his sworn statement during the plea colloquy wherein he knowingly and voluntarily admitted the crime in question. See Decision and Order dated October 15, 2014 at 5-6.

D.    Defendant's Sentencing

On December 23, 2014, defendant and Mr. Shiller appeared in County Court for defendant's sentencing. Defendant signed and was served with an order of protection on behalf of YR. S2-3[2] The prosecutor read an excerpt from a letter written by the victim's mother. She wrote that she feared for her life and YR's life if the defendant is not sent to jail. Only then will they be at peace. She felt that justice required defendant, an adult, to pay the consequences of his actions so that he will not do this to

---

[2] Numbers preceded by the designation "S" refer to the pages of the transcript of the sentencing proceeding held in the Dutchess County Court on December 23, 2014.

other girls. She asked that the Court sentence defendant to fifteen years in prison followed by ten years post release supervision. S3

Defense counsel addressed the Court. He reminded the Court that it agreed to a cap of fifteen years. Defense counsel argued for some lenience for the 35 year-old defendant with no criminal record in New York State and a limited one in Florida. He noted that defendant has a loving wife and a three year-old daughter who are present in the courtroom. S4 Defendant's wife is seriously ill with a heart condition and is in bad health. Defense counsel stated that defendant maintains his innocence and that he was coerced by prior counsel into pleading guilty. Defendant admits that he was wrong to be with the two girls at the hotel and he should have left. S4-5 According to defense counsel, the only thing defendant is guilty of is "being in the wrong place at the wrong time and nothing else." S5

Defendant then addressed the Court. He stated that he is a good man and has never done anything wrong in his life. S5 He is a loving husband and father. His only intention was to help the girls and he meant no harm. He told the court that he is innocent and was forced by Ms. Mungavin to take the plea. He wanted to go to trial so the truth would come out. He is sad to think of his family and his daughter who will grow up without a father. S5-6

11

The Court addressed defendant. It told defendant that it would be very concerned if defendant was indeed falsely accused. The Court has handled this matter from its inception, however, and that is simply not the case. Defendant was in the wrong place because he had two young girls with him in a hotel. These girls had consumed alcohol that defendant bought for them and supplied to them and they were drunk. YR was drunk to the point of unconsciousness. The Court does not find the facts to be in dispute. According to the Court, defendant took advantage of YR because she was unconscious and this is proven beyond a reasonable doubt by the DNA evidence found on various parts of the child's body including her sexual parts, her vagina, her anus and her mouth. Defendant gave multiple versions of how that happened which the Court deemed "excruciatingly outrageous." S6-7

The Court told defendant that he was a grown man with children who could have just walked away. He did not, however, but took advantage of the situation and is now paying the price. The only reason the Court agreed to the People's offer of fifteen years was to spare the young female victims from walking into the courtroom, sitting in the witness chair, and testifying in public against defendant. S7-8 The Court believed defendant was guilty of the crime he pleaded to and that his plea was

12

knowingly and voluntarily entered. It was his decision to forego the

*Huntley* Hearing and plead guilty. His motion to withdraw his plea was

denied.

With regard to defendant's criminal record, the Court noted he had a

long history of non-compliance with the law in Florida and a case in

California so he is not "as innocent as the driven snow" as he would like

the Court to believe. S8-9 The Court sentenced defendant on his plea to

Criminal Sexual Act in the First Degree to a determinate term of fifteen

years in prison plus ten years post release supervision. S9 Defendant must

register as a sex offender pursuant to the Sex Offender Registration Act.

S10 The Court wanted the record to reflect that defendant takes absolutely

no responsibility for what he did and expresses no remorse. S10

According to the Pre-Sentence Investigation Report detailing

defendant's statement about his actions on March 3, 2013, defendant told

Probation Officer Pamela Francis the following:

> His friend, AP, called him and asked him for
> help. She wanted him to pick her up because her
> friend, YR, was very drunk. When he drove up
> to the girls, YR was on the ground covered in
> mud. They had no money for a cab, and the
> defendant offered to take them home or wherever
> they wanted. AP asked him to take them to a
> motel so that YR could sober up and not get in
> trouble with her mother. He took the girls to a
> motel and stayed with them to be sure they were

> all right, waiting to take them home later. YR
> was sleeping and began to act out sexually and
> played with herself. According to defendant, he
> later masturbated in the bathroom, which is why
> his DNA was found on YR's vagina and anus.
> She had used the toilet.

PSR at 6[3]

Defendant denied buying alcohol for the girls. He said that he had

bought it earlier and it was in his truck, but then he noticed it was gone,

and he did not know which one of them took it. PSR at 6. Defendant did

not believe that his friendship with sixteen year-old AP was risky and

although he was initially sexually attracted to her, "she wasn't that type."

PSR at 6.

This appeal ensued.

## ARGUMENT

### POINT I
### THE COUNTY COURT PROPERLY DENIED APPELLANT'S
### MOTION TO WITHDRAW HIS GUILTY PLEA
(Answering Appellant's Point I)

Appellant argues that the County Court erred in denying his motion

to withdraw his guilty plea because it failed to recognize its own

misstatement of the sentencing law. According to appellant, the County

---

[3] Numbers preceded by the designation "PSR" refer to the pages of the transcript of the PreSentence Report prepared by Pamela Francis of the Dutchess County Probation Department on December 14, 2014.

14

Court incorrectly advised appellant at the time of his plea that he could receive consecutive sentences if convicted of the top two counts of the superseding indictment after trial. Appellant maintains that he was not subject to consecutive sentences and the court's inaccurate statement may have convinced him to plead guilty so as to avoid consecutive sentences, after trial, of up to twenty-five years on two B violent felonies.

Appellant failed to raise this allegation in his motion to withdraw his guilty plea and thus has failed to preserve the same for appellate review. See People v. Phipps, 127 A.D.3d 1500, 1501 (3d Dept. 2015). Since the County Court was never apprised of this argument, it could not respond to the same prior to sentencing appellant. Appellant alleged only that Assistant Public Defender Susan Mungavin "pressured and badgered" him to accept the People's offer and to plead guilty and that he was not guilty of the charge, claims, which were directly belied by the record of the plea proceedings.

In any event, appellant's present argument has no merit because the County Court could have legally sentenced him to consecutive terms of imprisonment if he had been convicted after trial of both Criminal Sexual Act in the First Degree and Rape in the First Degree under counts one and two of the superseding indictment.

15

According to appellant, pursuant to PL §70.25 (2), he could not have received consecutive sentences because his charges of Criminal Sexual Act in the First Degree and Rape in the First Degree were committed "through a single act or omission." To the contrary, appellant was charged with committing two separate and distinct sexual acts and thus could have been sentenced to consecutive terms of imprisonment if convicted of both sexual offenses.

Appellant was indicted for Criminal Sexual Act in the First Degree for engaging in "anal sexual conduct" with YR. See Superseding Indictment, Count One. Anal sexual conduct is defined as "contact between anus and penis." PL §130.00 (2)(b). Appellant was also indicted for Rape in the First Degree for engaging in "sexual intercourse" with YR. See Superseding Indictment, Count Two. According to the patterned criminal jury instructions for Rape in the First Degree, "sexual intercourse" means "any penetration, however slight, of the penis into the vaginal opening." See CJI2d[NY] PL §130.35(2). By definition, "anal sexual contact" and "sexual intercourse" are two separate sexual acts, constituting two distinct criminal offenses.

A trial court can legally impose consecutive sentences when each count involves a separate act constituting a distinct offense. People v.

16

Colon, 61 A.D.3d 772 (2d Dept.), app. denied, 13 N.Y.2d 743 (2009) (trial

court legally imposed consecutive sentences for convictions of rape in the

first degree and sexual abuse in the first degree as each count involved

separate sexual acts constituting a distinct offense); People v. Gersten, 280

A.D.2d 487 (2d Dept.), app. denied, 96 N.Y.2d 901 (2001) (court imposed

consecutive sentences for conviction of three separate acts of sodomy); see

also People v. Dallas, 31 A.D.3d 573 (2d Dept.), app. denied, 7 N.Y.3d

866 (2006); People v. White, 261 A.D.2d 653, 658 (3d Dept.), app. denied,

93 N.Y.2d 1029 (1999). Contrary to appellant's assertion, this is not a case

where the "actus reus" or the "wrongful deed that comprises the physical

component of a crime" is a "single, inseparable act" that violates more

than one statute. Cf. People v. Singh, 109 A.D.3d 1010, 1013-1014 (2d

Dept. 2013), app. denied, 23 N.Y.3d 1067 (2014).  Rather, the crimes

charged under counts one and two of the superseding indictment are

separate and distinct crimes involving separate acts of violence by

appellant against YR.

The first crime involved contact between appellant's penis and YR's

anus and the second crime involved penetration of appellant's penis into

YR's vagina. It is well settled that consecutive sentences may be imposed

where the acts of sexual intercourse and anal sex, "although part of one

17

encounter, comprise separate, distinct and independently punishable offenses and need not be separated by any specific period of time or action to justify the imposition of consecutive sentences." People v. Lanfair, 18 A.D.3d 1032, 1034 (3d Dept.), app. denied, 5 N.Y.3d 790 (2005). This is the case "regardless of whether the statutory elements of the offenses overlap." People v. Hurlbert, 81 A.D.3d 1430 (4th Dept.), app. denied, 16 N.Y.3d 896 (2011).

There is no absolute right to withdraw a guilty plea and a motion for such relief rests within the sound discretion of the trial court. People v. Alexander, 97 N.Y.2d 482 (2002); People v. White, 226 A.D.2d 750 (2d Dept.), app. denied, 88 N.Y.2d 943 (1996); CPL §220.60 (3). Indeed, "[a] defendant's request to withdraw a plea of guilty should "not be granted merely for the asking." People v. Rossetti, 95 A.D3d 1362 (2d Dept. 2012), citing People v. Alexander, 97 N.Y.2d at 485. And, a trial court's decision to deny a defendant's motion to withdraw his or her guilty plea should not be disturbed on appeal absent an abuse of discretion. People v. Jacob, 94 A.D.3d 1142, 1143 (2d Dept.), app. denied, 19 N.Y.3d 962 (2012); People v. Smith, 54 A.D.3d 879, 879 (2d Dept.), app. denied, 2008 N.Y. LEXIS 4296 (2008).

The County Court did not abuse its discretion in denying appellant's motion to withdraw his plea after it considered and rejected appellant's claim of coercion and factual innocence. The Court found that the plea minutes established defendant's guilty plea was knowingly and voluntarily entered and that defendant stated he was satisfied with his attorney's representation and advice. The Court further stated that appellant's allegations of coercion and assertion of innocence were belied by the record and his sworn statement during the plea colloquy wherein he knowingly and voluntarily admitted the crime in question. See Decision and Order dated October 15, 2014 at 5-6. For these reasons, appellant's conviction should be affirmed.

POINT II

APPELLANT RECEIVED THE EFFECTIVE ASSISTANCE OF COUNSEL

(Answering Appellant's Point II)

Next, appellant claims that he was denied the effective assistance of counsel because his attorney at the plea hearing failed to recognize and/or argue that the County Court gave appellant incorrect sentencing advice. As addressed in Point I, *supra*, the County Court properly advised appellant that he was subject to consecutive sentences of up to twenty-five years if he was convicted, after trial, of the top two counts of the superseding indictment. Accordingly, the instant claim of ineffectiveness of counsel

19

has no merit as there was no basis for defense counsel to object to the
County Court's proper legal advice.

Under the federal standard, a defendant must demonstrate that his
attorney's performance failed to meet an objective standard of
reasonableness and that, but for counsel's error, a reasonable probability
exists that the result of the proceeding would have been different.
Strickland v. Washington, 466 U.S. 668, 688-694 (1984). Under New
York law, a claim of ineffective assistance of counsel will be sustained
only when it is shown that counsel partook "an inexplicably prejudicial
course." People v. Zaborski, 69 N.Y.2d 863, 865 (1983); People v.
Benevento, 91 N.Y.2d 708, 713 (1998). The well-established measure is
whether "the evidence, the law, and the circumstances of a particular case,
viewed in totality and as of the time of the representation, reveal that the
attorney provided meaningful representation." People v. Baldi, 54 N.Y.2d
137, 147 (1981); People v. Henry, 95 N.Y.2d 563, 565 (2000).
"'[C]ounsel's efforts should not be second-guessed with the clarity of
hindsight' and . . . our Constitution 'guarantees the accused a fair trial, not
necessarily a perfect one.'" People v. Turner, 5 N.Y.3d 476, 480 (2005),
quoting People v. Benevento, 91 N.Y.2d at 712.

There is nothing in the record to suggest that appellant was deprived of effective assistance of counsel under either the federal or New York standards. Appellant received an advantageous sentence in exchange for his guilty plea. Moreover, at the time of his plea, appellant unequivocally expressed his understanding of the terms of the plea agreement as well as his satisfaction with his attorney. And, he confirmed to the Court that he had not been threatened or coerced into pleading guilty by anyone. P8-9 He then knowingly and voluntarily admitted committing the crime of Criminal Sexual Act in the First Degree. P16-18 Lastly, the County Court correctly advised appellant that he was subject to consecutive sentences if convicted of both Criminal Sexual Act in the First Degree and Rape in the First Degree. See People v. Colon, 61 A.D.3d at 772; People v. Gersten, 280 A.D.2d at 487; People v. Dallas, 31 A.D.3d at 573; People v. White, 261 A.D.2d at 658. The record established that by pleading guilty to count one of the superseding indictment with an agreed upon sentence of fifteen years, appellant avoided the possibility of a much lengthier sentence after trial.

In sum, the record establishes defense counsel provided meaningful representation with respect to appellant's plea of guilty. People v. Ford, 86

N.Y.2d 397, 404 (1995); People v. Anthoulis, 78 A.D.3d 854 (2d Dept.

2010), app. denied, 16 N.Y.3d 827 (2011).

## POINT III
### APPELLANT'S AGREED UPON SENTENCE WAS MOST
### APPROPRIATE
(Answering Appellant's Point III)

Appellant claims that his determinate sentence of fifteen years in

prison followed by ten years post release supervision was harsh and

excessive and this Court should modify the sentence by reducing it.

Appellant cannot be heard to complain that his prison sentence was

excessive since it was an agreed upon sentence pursuant to a negotiated

plea bargain. People v. Domin, 13 A.D.3d 391, 392 (2d Dept. 2004), app.

denied, 4 N.Y.3d 830 (2005); People v. Campbell, 69 A.D.3d 645, 645 (2d

Dept.), app. denied, 15 N.Y.3d 748 (2010); People v. Foy, 89 A.D.3d 1103

(2d Dept. 2011), app. denied, 18 N.Y.3d 924 (2012).

Since appellant pleaded guilty with the express understanding that

he would be sentenced to fifteen years in prison, and he in fact was

sentenced to fifteen years, he has no basis to complain that his sentence

was excessive. People v. Domin, 13 A.D.3d at 392.

The sentencing decision is a matter committed to the sound

discretion of the trial court.  People v. Farrar, 52 N.Y.2d 302, 305 (1981);

People v. Suitte, 90 A.D.2d 83 (2d Dept. 1982); People v. Notey, 72

22

A.D.2d 279, 282 (2d Dept. 1980). The trial court's determination of the kinds and limits of punishment should be afforded high respect on appeal absent an abuse of discretion. People v. Suitte, 90 A.D.2d at 85-86. Sentencing involves consideration of the crimes charged, the particular circumstances of the offender, and the purposes of a penal sanction. Id. at 83. In fashioning an appropriate sentence, the Court should keep in mind the four principle objectives of criminal punishment, to wit: deterrence, rehabilitation, retribution and isolation. People v. Notey, 72 A.D.2d at 282. "It is the sensitive balancing of these criteria in the individual case that makes the process of sentencing the most difficult and delicate decision that a Judge is called upon to perform." Id. at 283. Moreover, since a reviewing court lacks some of the first-hand knowledge of the case that the sentencing Judge is in a position to obtain, the trial judge's decision should be afforded high respect on appeal. Id. at 282.

Although an intermediate appellate court may modify a sentence that is unduly harsh or severe, People v. Delgado, 80 N.Y.2d 780, 783 (1992); People v. Thompson, 60 N.Y.2d 513, 519 (1983), there is no need for such sentence-review power here where the sentence meted out was part of a negotiated plea agreement and no extraordinary circumstances exist to warrant its modification on appeal.

Appellant's sentence was within the statutory guidelines and was

thus legal. Having been convicted of the Class B violent felony of

Criminal Sexual Act in the First Degree, defendant's determinate sentence

of fifteen years in prison followed by ten years post release supervision

was permissible. PL §70.80 (1)(b) & (4)(a)(i) & PL §70.45 (2-a), (c).

Appellant faced a maximum sentence of twenty-five years but received a

lesser sentence. PL §70.80 (4)(a)(i).

Moreover, appellant's sentence was fair. See People v. Hurlbert, 81

A.D.3d at 1432 (consecutive determinate sentences of 15 years on the rape

and sexual act counts not excessive); People v. Singh, 109 A.D.3d at 1010-

1011 (reviewing court modified defendant's determinate sentences of 17 ½

years on his rape in the first degree and criminal sexual act in the first

degree convictions reduced to 15 years); People v. Cruz, 92 A.D.3d 1138

(3d Dept.), lv. denied, 19 N.Y.3d 863  (2012) (sentence of 18 years for

conviction of criminal sexual act in the first degree); People v. Lancaster,

121 A.D.3d 1301 (3d Dept.), lv. denied, 24 N.Y.3d 1121 (2015)

(appellant's sentence of 18 years plus 10 years post release supervision on

conviction of criminal sexual act in the first degree not excessive).

The record established that the 35 year-old appellant took advantage

of the 16 year-old victim by providing her with alcohol, which she drank

to the point of becoming unconscious. Appellant then drove her to a motel where he removed her clothing and subjected to contact between his penis and her vagina, his penis and her anus and his penis and her mouth for the purpose of his own sexual gratification. The victim remained unconscious during these criminal sexual acts and was thus incapable of consenting to the same. The DNA evidence substantiated these sexual acts.

Notwithstanding this evidence, appellant denied committing the crime and said he was merely in the wrong place at the wrong time. The Court noted that he showed no remorse for the victim.

The Court stated that the only reason it had agreed to the People's offer of fifteen years was to spare the young female victims from walking into the courtroom, sitting in the witness chair, and testifying in public against defendant. S7-8 The Court believed appellant was guilty of the crime he pleaded to and that his plea was knowingly and voluntarily entered. S8 Given the nature of appellant's crime, the fact that the agreed upon sentence was less than the maximum allowable and there are no extraordinary circumstances to warrant a modification of the sentence imposed, this Court should not disturb appellant's sentence.

## CERTIFICATION OF COMPLIANCE

Pursuant to 22 NYCRR §670.10.3 (F)

The foregoing brief was prepared on a computer. A

proportionally spaced typeface was used, as follows:

Name of typeface: Times New Roman
Point size:        14
Line spacing:      Double Spaced
Margins:           1 ½" on left and 1"on top,
bottom and right side

The total number of words in the brief, inclusive of point

headings and footnotes and exclusive of pages containing the table of

contents, table of citations, proof of service, certificate of compliance, or

any authorized addendum containing statutes, rules, regulations, etc. is.

5,645.

_Laurie Fricchione_, Typist