1

1   COUNTY COURT OF THE STATE OF NEW YORK.
    COUNTY OF DUTCHESS
2   - - - - - - - - - - - - - - - - - - - X

3   PEOPLE OF THE STATE OF NEW YORK,          SENTENCE

4                   -against-            NYSID #12439269Z
                                         DOB - 6/27/79
5   CRAIG GABBIDON,                      CC# 66273589H

6                           Defendant.   IND. # 121/2013

7   - - - - - - - - - - - - - - - - - - - X

8                       Dutchess County Courthouse
                        10 Market Street
9                       Poughkeepsie, New York   12601
                        December 23, 2014
10

11  BEFORE:   HONORABLE STEPHEN L. GRELLER
              County Court Judge
12

13  APPEARANCES:

14          WILLIAM V. GRADY, ESQ.
            District Attorney of Dutchess County
15          236 Main Street
            Poughkeepsie, New York   12601
16          BY:  ALLISON STUART, ESQ.
                 Assistant District Attorney
17

18          ERIC S. SHILLER LAW OFFICE, P.C.
            Attorneys for Defendant
19          299 Broadway, #2
            Newburgh, New York   12550
20          BY:  ERIC S. SHILLER, ESQ.

21

22          Craig Gabbidon, Defendant

23

24                              Dot Magnelli, CCR
                                Senior Court Reporter
25

1          THE COURT:  This is Mr. Gabbidon.  Is

2    there any reason why sentence cannot be

3    imposed at this time?

4          MR. SHILLER:  No, Judge.

5          THE COURT:  Okay.  I have orders of

6    protection.

7    C R A I G   G A B B I D O N,

8          Was duly sworn by the Court Clerk.

9          COURT CLERK:  State your name out loud.

10         THE DEFENDANT:  Craig Gabbidon.

11         COURT CLERK:  Your date of birth?

12         THE DEFENDANT:  6/27/79.

13         COURT CLERK:  Thank you.

14         THE COURT:  Hand the orders of

15    protection, please, to counsel and have his

16    client sign them.

17         THE DEFENDANT:  Your Honor, I have some

18    things I need to state to the record, Your

19    Honor.

20         THE COURT:  I know you do and I'm going

21    to give you that opportunity but these are

22    orders of protection which I have signed and

23    I'm requiring that you sign them because

24    they're orders of the Court.  That means you

25    could have no contact with the protected

1        parties.

2            COURT CLERK:  Let the record reflect

3        that I'm serving the defendant with both, two

4        copies of the orders of protection.

5            THE COURT:  Okay.  Ms. Stuart, is there

6        anything you would like to say on behalf of

7        the People before the Court imposes sentence?

8            MS. STUART:  Yes, Judge, just obviously

9        I stand by all of the conferences that we've

10       had on this case and I just want to read a

11       small excerpt from the victim's letter:  I

12       fear for my and my daughters' lives if the

13       defendant is not in jail.  I fear that as

14       long as he is free we will never be at peace.

15       I want justice.  He was an adult and has to

16       pay for the consequences.  Hopefully, the

17       consequences will serve as a lesson so that

18       he will not do this to other girls in the

19       future.  I would just ask that we go with the

20       15 years determinate which was agreed upon

21       with ten years post-release supervision.

22            THE COURT:  Okay, thank you.

23       Mr. Shiller?

24            MR. SHILLER:  Yes, Judge, thank you.

25       Judge, as the Court is aware, Your Honor's

1    position was a cap of 15 years in state

2    prison in this matter.  Despite this, I would

3    ask for some lenience on the part of Your

4    Honor towards Mr. Gabbidon.  Mr. Gabbidon is

5    35 years old.  He has no criminal record in

6    New York State, very, very limited in the

7    State of Florida.  He has a loving wife

8    that's present in the courtroom with his

9    three-year old daughter, Athena.

10       Basically, as the Court-- if the Court

11   is not aware from the PSR, his wife has a

12   serious heart condition.  I wouldn't say--

13   luckily she's not dying at this time but

14   unfortunately there's no way to operate and

15   right now she's in very bad health.  She is

16   present here with Mr. Gabbidon's daughter.

17       Judge, in reading the PSR, as the Court

18   is aware, Mr. Gabbidon maintains his

19   innocence in this matter and basically

20   maintains that prior counsel to myself

21   coerced him into taking this plea.  He does

22   admit that he was wrong to be with these

23   girls.  He does admit that he was wrong to be

24   at the hotel.  However, beyond that, he knows

25   he should have left and now he's paying the

1   price for those mistakes.  With that being

2   said, again I would ask for some lenience and

3   ask Your Honor to sentence Mr. Gabbidon to

4   something less than 15 years in state prison

5   based upon the fact he has no prior criminal

6   record and as the Court is aware, we did file

7   a motion to a withdraw his plea which was

8   denied by Your Honor but in that regard

9   Mr. Gabbidon in my discussions with him, I

10  know he's very apologetic to the family due

11  to the fact that he was there.  However, he's

12  pretty much guilty of being in the wrong

13  place at the wrong time and nothing else.

14          THE COURT:  Okay, thank you.

15  Mr. Gabbidon, what would you like to say?

16          THE DEFENDANT:  Your Honor, I am a good

17  man.  I've never done nothing wrong in my

18  life.  I am a loving father and husband.  In

19  this situation my only intention was to help.

20  I meant no harm to anyone.  I did not commit

21  this crime that I'm being accused of.  I was

22  forced to take this plea by Miss Susan

23  McGavin which I strongly told her I wanted to

24  go to trial because I needed the truth to

25  come out.  I was not present in this

1        situation by myself.  I was there with my

2        co-defendant, which should have been here

3        right now, stating my sentence and explaining

4        to the Court that I did not do what I'm being

5        accused of.

6              Your Honor, I wish I can -- I wish I

7        could take it all back of what happened that

8        day but my intentions was to--I did not do

9        anything to harm anyone and I put that on

10       everything I believe in.

11             THE COURT:  Anything else, sir?

12             THE DEFENDANT:  No, Your Honor.  My

13       family is here.  It's hard for me to think of

14       life, the life they're going to live without

15       me, a baby that's going to grow up without a

16       father because -- I got nothing else, Your

17       Honor.

18             THE COURT:  Okay.  Mr. Gabbidon, Number

19       One, I know you believe you're falsely

20       accused.  I've handled this case from the

21       inception.  I know the facts of this case and

22       I would be very concerned if you were falsely

23       accused but you weren't.  Your attorney's

24       contention that you were in the wrong place

25       at the wrong time is partially true because

1    you were.  You had two young girls with you.

2    They consumed alcohol which you purchased for

3    them and they were drunk.  One was drunk, if

4    not two, to the point of unconsciousness.

5    The facts are not from the point of view of

6    this Court in dispute at all.  You took

7    advantage of that girl because she was

8    unconscious and the reason that that's proved

9    beyond any doubt is because of the presence

10   of DNA on that child on various parts of her

11   body, her sexual parts, her vagina, her anus

12   and her mouth and you gave multiple different

13   versions of how that happened which I find

14   excruciatingly outrageous, to be very honest

15   with you.

16        You could have walked away.  You didn't

17   have to do it but you took advantage of the

18   situation and you're paying the price for it

19   but I'm going to tell you something,

20   Mr. Gabbidon.  The only reason that the

21   District Attorney made you an offer and I

22   accepted that offer was because I wanted to

23   spare those kids or that girl from walking

24   into this courtroom and sitting in this chair

25   and having to testify in public and because

1          of that, I accepted this offer, no other

2          reason, because you were charged with

3          criminal sexual act first and I believe you

4          were guilty of sexual act first and I still

5          believe that.  I also will state this:  You

6          pled guilty before me knowingly, voluntarily

7          and intelligently.  You had ample time.  We

8          were here for a Huntley Hearing.  You didn't

9          want to go through that hearing.  You didn't

10         want to go any further and basically you made

11         the best deal you possibly could under the

12         circumstances.

13             THE DEFENDANT:  That was not my

14         decision, Your Honor.

15             THE COURT:  Mr. Gabbidon, you've had

16         your opportunity.  This is my turn.  That was

17         your decision.  Therefore, you made a motion,

18         I denied that motion.  Obviously, you'll

19         appeal that motion and appeal this decision

20         which is your right to do but as I said, I

21         want you to understand what my thinking was

22         in terms of how this happened, why this

23         happened.

24             You simply took advantage of two kids

25         who got drunk and grown people, grown men who

1    have children, you have your own children,

2    you should have simply walked away and you

3    shouldn't have done it.  It's that simple

4    from my point of view and the fact that you

5    have an unblemished record, you have a long

6    history of non-compliance with the law in

7    Florida, you have a case in California.

8    You're not as innocent as the driven snow as

9    you would like me to believe.  Having said

10   that, your only motivation, and that's what

11   it is.  Mr. Gabbidon, there is no doubt in

12   this Court's mind that you committed the acts

13   for which you pled guilty to.

14        Mr. Gabbidon, upon your conviction of

15   criminal sexual act in the first degree,

16   which is a Class B violent felony, in

17   violation of Section 130.50, Subdivision 2,

18   of the Penal Law under the first count of

19   indictment or superseding indictment 121 for

20   the year 2013 it is the sentence of the Court

21   that you be sentenced to a determinative

22   period of incarceration in state prison of

23   ten years -- I'm sorry, of 15 years plus ten

24   years post-release supervision.

25        In addition, I require that you register

1          as a sex offender pursuant to the Sex

2          Offender Registration Act and I impose the

3          following fines and surcharges:  The sum of

4          $300 as a surcharge, $25 Crime Victim

5          Assistance Fee, a $50 DNA fee, a $50 sex

6          offender fee and a $1,000 supplemental sex

7          offender fee, a total of $1,425 and also let

8          the record reflect, Mr. Gabbidon, that you

9          take absolutely no responsibility for what

10         you did.  You take -- you express no remorse

11         for what you did and you don't take

12         responsibility for anything.

13              Having said that, that's the sentence of

14         the Court.  You can advise Mr. Gabbidon of

15         his rights to appeal.

16              COURT CLERK:  Mr. Gabbidon, you have

17         been convicted after a plea of guilty and

18         sentenced.  You are entitled to know what

19         your rights are with respect to an appeal

20         from the judgment of conviction, if you are

21         so minded.  Therefore, listen carefully to

22         what I now advise you.

23              You have the right to appeal to the

24         Appellate Division, Second Department, within

25         thirty days and, in addition, upon proof of

1       your financial inability to retain counsel

2       and to pay the cost and expenses of the

3       appeal, you have the right to apply to the

4       Appellate Division, Second Department, for

5       the assignment of counsel and to prosecute

6       the appeal as a poor person and to dispense

7       with printing.

8           The Appellate Division, Second

9       Department, is located at 45 Monroe Place,

10      Brooklyn, New York.

11          Do you understand what I have just told

12      you and what your rights are?

13          THE DEFENDANT:  Yes.

14          THE CLERK:  Let the record indicate that

15      I am providing you with a copy of this

16      notice.  If you desire to appeal, your

17      attorney will explain to you your rights more

18      fully.

19          THE COURT:  Thank you.

20          * * * * * * * * * * * * *

21      The foregoing is a true and accurate

22  transcript of the proceedings.

23

24          Dorothy Magnelli, CCR

25          Senior Court Reporter

9

*Mailed 7/28/15 + 30 + (3)days = (12ch 24)*
*+ 30 days more = 8/1/15 (Drop Dead) (Saturday)*

*To be submitted*

# THE SUPREME COURT OF THE STATE OF NEW YORK
## APPELLATE DIVISION: SECOND DEPARTMENT

APPEAL NUMBER 2015-00872

## THE STATE OF NEW YORK

v.

## CRAIG GABBIDON

*IND. #*
*(S) 121/2013*

## BRIEF OF APPELLANT

DEL ATWELL
Attorney for Appellant
39 5TH Street
East Hampton, NY 11937
(631) 267-2067

TABLE OF CONTENTS

STATEMENT PURSUANT TO C.P.L.R. 5531 .............................. 3

PRELIMINARY STATEMENT ......................................... 4

QUESTIONS PRESENTED ............................................ 3

STATEMENT OF FACTS ............................................. 5

LEGAL ARGUMENT ................................................ 6

POINT I

THE LOWER COURT ERRED IN DENYING THE MOTION TO WITHDRAW BECAUSE IT FAILED TO RECOGNIZE ITS OWN MISTATEMENT OF SENTENCING LAW.

A. Pursuant to Penal Law, section 70.25 (2), the trial court incorrectly advised that consecutive sentences were available.

B. The plea should be withdrawn.

POINT II

APPELLANT WAS DEPRIVED OF THE EFFECTIVE ASSISTANCE OF COUNSEL.

A Pursuant to *People v. Griffin*, ineffectiveness is reviewable if the claim infects the integrity of the plea.

B. The error in sentencing law should have been recognized and addressed.

C. The plea was infected by counsel's ineffectiveness because its integrity was compromised.

POINT III

THIS COURT SHOULD MODIFY THE SENTENCE.

CONLUSION ................................................................................... 20

CERTIFICATE OF COMPLIANCE ...................................... 20

SUPREME COURT OF THE STATE OF NEW YORK
APPELLATE DIVISION : SECOND DEPARTMENT

---

THE PEOPLE OF THE STATE OF NEW YORK,

-*against*-

CRAIG GABBIDON

---

## STATEMENT PURSUANT TO RULE 5531

1. The indictment number in the court below was 121-13.

2. The full names of the original parties were: People of the State of New York against Craig Gabbidon. This appeal is on behalf of Craig Gabbidon.

3. This action was commenced in County Court, Dutchess County.

4. This action was commenced by the filing of an indictment.

5. This appeal is from a judgment convicting appellant of criminal sexual act in the 1st degree.

6. This is an appeal from a judgment of conviction rendered December 23, 2014.

7. Appellant has been granted permission to appeal as a poor person. The appendix method is not being used.

3

## PRELIMINARY STATEMENT

This is an appeal from a judgment of the County Court, Dutchess County, rendered December 23, 2014, convicting appellant after a guilty plea of criminal sexual act in the 1st degree. He was sentenced to a determinate term of 15 years incarceration.

A timely Notice of Appeal was filed and this court granted defendant permission to appeal as a poor person. No stay of proceedings has been sought.

## QUESTIONS PRESENTED

1. Did the lower court err in denying the motion to withdraw because it failed to recognize its own misstatement of sentencing law?

a. Pursuant to Penal Law, section 70.25 (2), did the trial court incorrectly advise that consecutive sentences were available?

b. Should the plea be withdrawn?

2. Was appellant denied the effective assistance of counsel?

a. Pursuant to *People v. Griffin*, is ineffectiveness reviewable if the claim infects the integrity of the plea?

b. Should the error in sentencing law have been recognized and addressed?

c. Was the plea infected by counsel's ineffectiveness because its integrity was compromised.

3. Should this court modify the sentence?

4

## STATEMENT OF FACTS

On March 3, 2013, at approximately 8:00 p.m., it was alleged that appellant bought alcohol for two minor females at a local liquor store. One of the girls became extremely intoxicated. She alleged that appellant drove her to a hotel and carried her into the room due to her state of unconsciousness. Once in the room, it was charged that appellant removed her clothing and subjected her to sexual contact. The contact took place between his penis and her vagina, anus and mouth. Afterward, he took her home. Appellant was arrested shortly thereafter because the other girl's mother called police when she did not return home. PSR, 5.

Forensic testing was conducted utilizing DNA analysis obtained from appellant and the complaining witness. The tests concluded that "genetic information was insufficient to generate a profile from the vagina swabs-sperm fraction, anal swabs non-sperm fraction, vulvar swabs sperm fraction, oral swabs sperm fraction and the swabs of the red marks on the [the victim's] right shoulder." "Forensic DNA analysis is a possibility in this case." PSR, 5.

On June 11, 2014, appellant chose not to proceed to trial and entered a negotiated guilty plea. He was advised of his right to a jury trial, his right to call witnesses at trial, his right to remain silent and his right against self incrimination. He was advised that by pleading guilty he was giving up all these rights and he would be admitting to the crime of criminal sexual act in the 1st degree, a class B

violent felony. The trial court accepted his plea of guilty. T. 6/11/14, 4-15.

After the plea hearing, defense counsel was relieved and new counsel entered. Counsel filed a motion to withdraw the plea which was denied. Sentence was imposed subjecting appellant to a determinate term of 15 years incarceration. T. 12/23/14, 3-5, 9.

## ARGUMENT

### POINT I

THE LOWER COURT ERRED IN DENYING THE MOTION TO WITHDRAW BECAUSE IT FAILED TO RECOGNIZE ITS OWN MISTATEMENT OF SENTENCING LAW.

A. Pursuant to Penal Law, section 70.25 (2), the trial court incorrectly advised that consecutive sentences were available.

The record reveals that the plea hearing was conducted on June 11, 2014 and appellant was represented by the Public Defenders' Office of Dutchess County. The sentencing hearing did not take place until over 6 months later and prior counsel had been relieved. On December 23, 2014, appellant was represented by an independent lawyer not affiliated with the County Public Defender. In the interim between plea and sentence, new counsel filed a motion to withdraw the plea entered when appellant was represented by the Public Defender. Specifically, at the sentencing hearing, counsel advised the court that the motion to withdraw was made because appellant "maintained his innocence" and that he was "coerced into

6

taking the plea." His only admission of wrongdoing was that he was at the hotel

with the girls and therefore was guilty of something less than sexual assault. T.

12/23/14, 4-5.

Significantly, at the plea hearing, the court offered legal advice to the

appellant that was incorrect as a matter of law. Specifically, appellant was charged

with, and plea to, criminal sexual act in the 1st degree in violation of Penal Law,

section 130.50. The second count of the indictment was rape in the 1st degree

which is a violation of Penal Law, section 130.35. T. 6/11/14, 13-14. Just before the

plea was taken the court stated as follows:

THE COURT: Do you understand that the maximum penalty for the second

count, which is rape in the first degree, is also 25 years?

THE DEFENDANT: Yes, sir.

THE COURT: Do you understand that because of the nature of the

allegations in the superseding indictment, you could be sentenced *consecutively*?

THE DEFENDANT: Yes, sir.

T. 6/11/14, 13-14, (emphasis added).

This is an inaccurate statement of sentencing law. More importantly, it may

have mistakenly served to convince appellant that it was in his best interests to

pled guilty. Specifically, both counts were B class violent felonies which, for a

first-time offender, carry a minimum of 5 and a maximum of 25 years

*[handwritten margin note: this is if he had gone to trial + was connected of both counts!!, The max!!!]*

7

imprisonment. *P.L.*, 70.02(3)(a). The sentencing court advised that it could impose the 25 year determinate maximum permitted by statute regarding each offense and then order that they run consecutively thereby totaling 50 years incarceration. By statute, the charges cannot run consecutively pursuant to Penal Law section 70.25(2) which states in relevant part:

When more than one sentence of imprisonment is imposed on a person for two or more offenses committed through a single act or omission, or through an act or omission which in itself constituted one of the offenses and also was a material element of the other, the sentences, except if one or more of such sentences is for a violation of section 270.20 of this chapter, *must run concurrently, PL,* 70.25(2); (emphasis added).

The appellant faced separate charges that were committed through a single act or omission. The Court of Appeals has succinctly set forth the formula for determining whether the general rule requires that multiple sentences must be concurrent. *People v. Laureano*, 87 N.Y.2d 640, 642 N.Y.S.2d 150 (1996). In *Laureano,* it was reasoned that "in determining whether concurrent sentences are required, the sentencing court must first examine the statutory definitions of the crimes for which defendant has been convicted. Because both prongs of Penal Law 70.25(2) refer to the 'act or omission' that is, the 'actus reus' that constitutes the offense, the court must determine whether the actus reus element, is by definition,

the same for both offenses (under the first prong of the statute), or if the actus reus for one offense is, by definition, a material element of the second offense (under the second prong)." *Id.* at 87 N.Y.2d 643.

However, the court in *Laureano*, did leave the determination to a mere theoretical analysis. Rather, it placed an obligation to prove that concurrent sentences are not required upon the People. The formula goes on to conclude that if the *actus reus* is not the same, "then the People have satisfied their obligation of showing that concurrent sentences are not required. If the statutory elements do overlap under either prong of the statute, the People may not yet establish the legality of consecutive sentencing by showing that the 'acts or omissions' committed by defendant were separate and distinct acts." *Id.*

Here, neither the People nor the court offered an explanation as to why concurrent sentences for the charges were not required to run concurrently. The black letter law of Penal Law 70.25(2) and the Court of Appeals holding in *Laureano* was ignored. Even if some reasoned legal authority where offered to rationalize consecutive sentences, the integrity of the sentence is tainted because the obligation to provide correct legal advice regarding the potential sentencing consequences was not fulfilled.

As charged in this case, criminal sexual act in the 1st degree requires in relevant part as follows:

A person is guilty of criminal sexual act in the first degree when he or she engages in oral sexual conduct or anal sexual conduct with another person:

2. Who is incapable of consent by reason of being physically helpless …

*P.L.*, 130.50, 2.

As charged in this case, rape in the 1st degree requires in relevant part as follows:

A person is guilty of rape in the first degree when he or she engages in sexual intercourse with another person:

2. Who is incapable of consent by reason of being physically helpless …

*P.L.*, 130.35, 2.

Here, the facts of this case allege that the victim was extremely intoxicated. By her own admission, she does not "recall anything that happened." PSR. 5-7. Because of the allegation, the People choose to indict appellant for those sexual offenses relative to a victim who is rendered "physically helpless." This is the exact language used in Penal Law, sections 130.50 and 130.35. The elements of both offenses are otherwise identical. The *actus reus* that constitutes both offenses are, by definition, the same. Further, the *actus reus* for both offenses are, by definition, a material elements of each other. *People v. Laureano*, 87 N.Y.2d at 643; *Penal Law* 70.25(2).

It is anticipated that the People may argue that the offenses are different

10

because criminal sexual act in the 1st degree contemplates oral or anal sexual

conduct and rape in the 1st degree contemplates sexual intercourse. By statutory

definition, sexual intercourse occurs upon *any penetration* ... *P.L.*, 130.00;

(emphasis added).

Only a concurrent, rather than a consecutive sentence was warranted for

convictions on both counts. The offenses do not exist independently of the each

other because they both were committed through a single actus reus. Therefore,

appellant could never have been exposed to consecutive terms.

B. The plea should be withdrawn.

C.P.L. § 220.60 (4) provides that any time prior to the imposition of

sentence, the court, in its discretion, may permit a defendant to withdraw a plea of

guilty and reinstate the indictment as it existed at the time the plea of guilty was

entered.

Here, the appellant made the appropriate motion at the appropriate time.

Several weeks before sentence was imposed, defense counsel moved, in writing, to

vacate the plea. The strength of the motion depends on the detail of supporting

facts. A motion to withdraw is given greater consideration when it is made shortly

after the plea, is in writing, and contains specific allegations supporting the motion.

*People v Ranieri*, 43 AD2d 1012 (4th Dept 1974).

Here, this is not an instance where the defendant simply wishes to withdraw

11

the plea because of second thoughts. It is recognized that the application is within the court's sound discretion and that such motions are not readily granted. *People v Lisbon*, 187 AD2d 457 (2d Dept 1992); *People v Alexander*, 97 NY2d 482 (2002). Usually, they are not allowed, absent some new information/evidence or mistake in the inducement to plea. *People v D'Adamo*, 281 AD2d 751 (3d Dept 2001); *People v Stephens*, 291 AD2d 841 (4th Dept 2002). However, it is error for the court to summarily deny a motion without a hearing where the defendant's motion raises a genuine issue of fact. *People v Brown*, 14 NY3d 113 (2010).

Here, the obvious issue of fact is evidenced by the fact that that the judge who convicted the appellant offered advice which was an incorrect statement of *He stated correctly!* statutory sentencing law. In this situation, the plea cannot be said to be a knowing and voluntary decision thereby verifying the possibility of withdrawal. *People v Britt*, 200 AD2d 401 (1st Dept 1994). Specifically, but for the incorrect sentencing information, defendant would not have entered the guilty plea. The easiest and most available resolution would have been to grant the motion and allow the appellant to go to trial.

A conviction resulting from a plea can violate public policy because it upsets the "'reasonable assurance of certainty' provided by the negotiated sentence" and thereby threatens to destabilize the entire plea-bargaining system in this State by eroding public trust in the fairness and integrity of the process. *People v. Parker*,

271 A.D.2d 63, 71 (4th Dept. 2000). A motion to withdraw a guilty plea that is premised on something other than a renewed claim of innocence does provide a legal basis for relief. Such claims must be carefully reviewed by the courts because they are occasionally meritorious. *Britt v. Legal Aid Society*, 95 N.Y.2d 443 (2000); *People v. Flowers*, 30 N.Y.2d 315 6 (1972); *People v. Beasley*, 25 N.Y.2d 483 (1969); *People v. Berger*, 9 N.Y.2d 692 (1961). Review of these post-plea claims under CPL § 220.60 is an integral part of a criminal courts judge's oversight and supervision of "the delicate balancing of public and private interests in the process of plea bargaining." *People v. Selikoff*, 35 N.Y.2d 227, 243 (1974). A criminal defendant's decision to plead guilty or stand trial must be the product of a free and voluntary choice among the available alternatives, and must never be the result of any other influence. See *Boykin v. Alabama*, 395 U.S. 238 (1969).

Here, this same principle should logically apply to appellant's decision to exercise his statutory right to move to withdraw the guilty plea pursuant to CPL § 220.60 or, alternatively, to stand by the original plea. This critical decision must likewise remain unaffected by influences emanating from the court. For this reason, the sentencing court's decision should be rejected as contrary to public policy in this State.

In the event that this Court does not agree that the sentencing court should have exercised its discretion to vacate the plea, appellant is requesting that

13

it be permitted in the interest of justice pursuant to *C.P.L.* § 470.15 (6).

## POINT II

### APPELLANT WAS DEPRIVED OF THE EFFECTIVE ASSISTANCE OF COUNSEL.

A. Pursuant to *People v. Griffin*, ineffectiveness is reviewable if the claim infects the integrity of the plea.

Appellant asserts that he received constitutionally ineffective assistance of counsel because his attorney at the plea hearing failed to recognize and/or argue that the court had given the appellant sentencing advice that was incorrect as a matter of law. It is anticipated that the People assert that defendant forfeited the ineffectiveness claim by pleading guilty. Rather, the Court of Appeals has tated that such a claim is not forfeited. Claims related to the integrity of the criminal justice system, and "rights of a constitutional dimension that go to the very heart of the process," survive a guilty plea. *People v. Griffin*, 46 NYLJ, 120259452186 at 5 (April 13, 2013), citing *People v Hansen*, 95 NY2d 227, 230-231 (2000); see also *People v.Taylor*, 65 NY2d at 5 (a guilty plea "does not preclude certain rights of constitutional dimension"). The *Hansen* court opined that the "critical distinction is between defects implicating the integrity of the process, which may survive a guilty plea, and less fundamental flaws, such as evidentiary or technical matters, which do not." *Hanson,* 95 NY2d. at 231.

14

Here, and as explained by the Court of Appeals in the authorities cited above, claims to counsel are deeply intertwined with the integrity of the process in Supreme Court that defendant's guilty plea is no bar to appellate review. *Griffin* at 6. It is further anticipated that the People will rely on *People v. Petgen,* 55 NY2d 529 (1982) to argue against reviewability. The *Griffin* court found that such reliance can be misplaced. In *Petgen,* the Court found that, as a result of a guilty plea, defendant forfeited his claim that counsel was ineffective. However, in *Petgen* there was no suggestion that the ineffective assistance of counsel claim infected the plea. Furthermore, *Petgen* cannot support the argument that a plea forfeits an ineffectiveness claim in all instances. *Griffin* 46 NYLJ at 6.

B. The error in sentencing law should have been recognized and addressed.

Here, appellant's first attorney, the one who was later relieved, was standing next to the appellant when the judge told him that he could order a consecutive sentence in violation of Penal Law, section 70.25(2). There should be no criminal conviction. Apparently, counsel's questionable actions were even noticed by the appellant. Specifically, the attorney who represented appellant during the plea was removed from the case. It is suggested that an effective attorney would have taken the appropriate action and at least requested an adjournment to determine the extent of appellant's impairment.

In *Strickland v. Washington*, 466 U.S. 688, 80 L.Ed.2d 674, 104 S.Ct. 2052

(1984), the Court set forth the criteria to be utilized in determining when a defendant's conviction must be reversed because he did not receive the effective assistance of counsel guaranteed by the Sixth Amendment. The benchmark for judging such a claim is whether counsel's conduct so undermined the proper functioning of the adversarial process that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.* at 694.

The second prong of the *Strickland* test requires that prejudice must be proved; it is not presumed. *Id.* at 692-693, 104 S.Ct. at 2067, 80 L.Ed.2d 696-697. Specifically, a defendant alleging actual ineffectiveness must show that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694, 104 S.Ct. at 2068, 80 L.Ed.2d at 698.

Here, the *Strickland* threshold is realized because if counsel had not erred, the plea would not have been entered thereby resulting in a different outcome.

C. The plea was infected by counsel's ineffectiveness because its integrity was compromised.

Appellant pled to a B class violent felony as a non-predicate offender. The crime carries a sentencing range of 5 to 25 years. *P.L.*, 70.02(3)(a). He was

16

sentenced to an determinate term of 15 years. More importantly, the constitutional components of the plea process were compromised. *Santobello v. New York*, 404 U.S. 254, 262 (1971). Counsel was unaware of the ingredients of the sentencing guidelines. The right to effective assistance of counsel is guaranteed by the Federal and State Constitutions. *US Const,*. 6th Amend; *NY Const.*, Art. I, @ 6.

A defendant in a criminal matter is entitled to adequate and effective assistance at all stages of a proceeding. *Quartararo v. Fogg*, 679 F.Supp. 212, 239-43 (E.D.N.Y. 1988). Since the role of a trial attorney is to ensure full an adequate representation, it is necessary to make use of all available evidence to insure that the adversarial process works properly in presenting the best defense possible.

Here, counsel was ineffective during the plea negotiation phase of the process. If the evidence, the law, and the circumstances of a particular case, viewed in totality and as of the time of the representation, reveal that the attorney provided meaningful representation, the constitutional requirement will have been met. *People v. Baldi*, 54 NY2d 137, 146-147. A contention of ineffective assistance of trial counsel requires proof of less than meaningful representation, rather than simple disagreement with strategies and tactics. *People v. Benn*, 68 NY2d 941. An attorney may fail to make proper inquiry of the factual basis for a hearing. To prevail on a claim of ineffective assistance of counsel, it is incumbent on defendant to demonstrate the absence of strategic or other legitimate explanations for

counsel's failure at a particular hearing. *People v. Rivera*, 71 NY2d 705, 707; 530 NYS2d 52, 54 (1988).

In this case, defense counsel was unable to recognize and address the constitutional infringement perpetrated upon the defendant when he admitted his guilt. This ineffectiveness compromised the integrity of the conviction and it constitutes a denial of meaningful representation pursuant to *Strickland/Baldi*.

POINT III

THIS COURT SHOULD MODIFY THE SENTENCE.

As argued above in Points I and II, this case should be remanded. If this Court is not inclined to agree, the following is offered to reduce the sentence as harsh and excessive. Reviewability of a negotiated sentence survives a guilty plea. *People v. Lynn*, 28 NY2d 196 (1971); *People v. Pollenz*, 67 NY2d 264 (1986). This Court is empowered with "broad plenary power to modify a sentence that is unduly harsh or severe under the circumstances, even though sentence may be within the permissible statutory range and such sentence-review power may be exercised, if the interest of justice warrants, without deference to the sentencing court." *People v. Hearn*, 669 NYS2d 984, 248 AD2d 889 (1998); see also, *People v. Harmon*, 695 NYS2d 758, 264 AD2d 941 (1999): *People v. Sheppard*, 708 NYS2d 740, 273 AD2d 498 (2000).

At sentencing, appellant's new attorney attempted to request a lesser

18

sentence despite the fact that his motion to withdraw had been denied. Specifically, he advised that appellant is 35 years old, has a 3 year old daughter and no criminal record. He is married and his wife, who suffers from a fatal heart condition, was supportive and in the courtroom at the time of the sentencing. He was remorseful and apologized to the victim's family. T. 12/23/14, 4-5.

The Supreme Court has noted that "circumstances in aggravation or mitigation are to be determined by the court after consideration of several items: the trial record; the probation officer's report; statements in aggravation or mitigation submitted by the parties, the victim, or the victim's family; and any further evidence introduced at the sentencing hearing." *Cunningham v. California*, 549 U.S. 270, 277 (2007).

Here, it appears the sentencing court did not consider the factors mentioned by the Court and rather, was influenced by a personal sense of morality. It is well settled that a sentence whose object is retribution rather than reformation and rehabilitation is excessive. *People v. Stewart*, 394 N.Y.S.2d 690 (1997). Finally, C.P.L. 470.15(6)(b) provides for relief from a sentence that, though legal, is unduly harsh or severe. Although excessive, the appellant's sentence is statutorily legal. However, it is harsh and excessive and the court should exercise its discretion to remand, reduce and/or modify defendant's sentence. *People v. Seneca*, 44 A.D. 2d 899, 356 N.Y.S.2d 148 (1974); CPL 470.15(3).

19

## CONCLUSION

For the reasons stated, Defendant-Appellant respectfully requests that the conviction be modified, vacated and/or remanded to the trial court.

Respectfully submitted,

_____

Del Atwell, Esq.

## CERTIFICATE OF COMPLIANCE

It is hereby certified that this brief conforms to CPLR 5529 and sections 670.10.1, 670.10.3 of the rules of this Court. It was prepared on a computer utilizing a helve, 14 point proportionally spaced typeface. It is double paced and contains 4052 words.

_____

Del Atwell, Esq.

Dated: May 29, 2015

20

10

To Be Submitted By:
KIRSTEN A. RAPPLEYEA
Assistant District Attorney
Of Counsel

STATE OF NEW YORK

SUPREME COURT : APPELLATE DIVISION

SECOND JUDICIAL DEPARTMENT

THE PEOPLE OF THE STATE OF NEW YORK,

Respondent,

- against -

CRAIG E. GABBIDON,

Defendant-Appellant.

APPELLATE
DIVISION
DOCKET
NO. 2015-00872

DUTCHESS
COUNTY IND.
NO. (S)121/2013

RESPONDENT'S BRIEF

WILLIAM V. GRADY
Dutchess County District Attorney
Attorney for Respondent
236 Main Street
Poughkeepsie, New York  12601
(845)  486-2300

By:    KIRSTEN A. RAPPLEYEA
Assistant District Attorney
Of Counsel

# TABLE OF CONTENTS

PRELIMINARY STATEMENT................................................ 1

FACTS........................................................................ 1
A. Introduction............................................................ 1
B. Defendant's Guilty Plea............................................. 2
C. Defendant's Motion to Withdraw his Guilty Plea.............. 9
D. Defendant's Sentencing............................................. 10

ARGUMENT
POINT I.................................................................... 14
THE COUNTY COURT PROPERLY DENIED
APPELLANT'S MOTION TO WITHDRAW HIS GUILTY
PLEA
(Answering Appellant's Point I)

POINT II.................................................................... 19
APPELLANT'S RECEIVED THE EFFECTIVE
ASSISTANCE OF COUNSEL
(Answering Appellant's Point II)

POINT III.................................................................. 22
APPELLANT'S AGREED UPON SENTENCE WAS
MOST APPROPRIATE
(Answering Appellant's Point III)

CONCLUSION.............................................................. 26

CERTIFICATE OF COMPLIANCE...................................... 27

## PRELIMINARY STATEMENT

This is an appeal by defendant/appellant Craig E. Gabiddon from a judgment of the County Court of Dutchess County (Greller, J.) dated December 23, 2014, convicting him upon his plea of guilty, of the Class B Violent Felony of Criminal Sexual Act in the First Degree in violation of Penal Law ("PL") §130.50 (2). Appellant was sentenced to a determinate term of fifteen (15) years followed by ten (10) years of post release supervision. A full order of protection was issued on behalf of the victim.

No stay of execution was ordered.

## FACTS

A.    Introduction

By Dutchess County Superseding Indictment No. 121/2013 dated January 22, 2014, defendant was accused of committing the following crimes: the Class B Violent Felony of Criminal Sexual Act in the First Degree in violation of PL §130.50 (2), the Class B Violent Felony of Rape in the First Degree in violation of PL §130.35 (2), two counts of the Class E Felony of Criminal Sexual Act in the Third Degree in violation of PL §130.40 (2) and the Class A Misdemeanor of Endangering the Welfare of a Child in violation of PL §260.10 (1).

1

The Bill of Particulars alleged on March 3, 2013 between the hours of 2:00 p.m. and 8:00 p.m. at 4171 Albany Post Road in Hyde Park, New York, defendant purchased alcohol for YR and her friend at a liquor store in the City of Poughkeepsie. YR became extremely intoxicated from the alcohol defendant had purchased for her. Defendant placed YR and her friend in his truck and drove them to a motel in Hyde Park. Defendant carried YR into the motel as she was too intoxicated to walk. While in the motel, defendant removed YR's clothing and subjected her to contact between his penis and her anus, her vagina and her mouth. He did so for his own sexual gratification. YR was incapable of consenting to these acts because she was less than seventeen years old, having been born on November 7, 1996, and because she was physically helpless because she was intoxicated.

B.     Defendant's Guilty Plea

Defendant and his attorney, Assistant Public Defender Susan Mungavin, appeared in County Court on June 11, 2014 for a combined *Huntley/Sandoval* Hearing. At the outset of the proceeding, Ms. Mungavin informed the Court that defendant wished to withdraw his previously entered plea of not guilty to Superseding Indictment No. 121/2013 and instead plead guilty to count one of that indictment charging him with

2

Criminal Sexual Act in the Degree. P2[1] Defendant's plea would cover the remaining four counts of that indictment. P2-4 Defendant stated that he understood this to be the agreement. P3-4

Defendant stated that he was pleading guilty to Criminal Sexual Act in the First Degree in violation of PL §130.50 (2). P6 Defendant admitted that on March 3, 2013, in the Town of Hyde Park, he engaged in anal sexual conduct with YR, who was incapable of consent by reason of being physically helpless. P4

Before the Court accepted defendant's guilty plea, it asked defendant some questions to make sure that he understood the proceedings and that he was pleading guilty voluntarily. P4-5 Defendant stated that he understood that instead of pleading guilty, he could have a jury trial. He also understood that by pleading guilty, he was waiving his right to the Huntley Hearing that was scheduled to take place today. P5

Defendant was instructed that at a jury trial, the parties would select a jury by asking potential jurors questions. The parties would be able to excuse jurors from serving and eventually twelve jurors would be chosen. Defendant understood. P5

---

1 Numbers preceded by the designation "P" refer to the pages of the transcript of the plea proceedings held in the Dutchess County Court (Greller, J.) on June 11, 2014.

3

Defendant understood that the People have an obligation to prove each and every element of the crimes charged against him beyond a reasonable doubt. The prosecutor would attempt to do this by calling witnesses and offering whatever other evidence there might be. Defense counsel would be able to cross-examine the witnesses and challenge the admissibility of any evidence. At the end of the People's case, defense counsel could argue to the jury that the People did not prove his guilt beyond a reasonable doubt, or instead he could present witnesses and evidence on defendant's behalf.  P5-7 If those witnesses were reluctant to come to court, defense counsel would issue a subpoena, which is a court order requiring their presence in court. Defendant understood. P7

The Court told defendant that if he chose to testify at the trial, that was his right. If he chose not to testify, the jury could not hold that fact against him because he has a constitutional right to remain silent and not incriminate himself. He has no obligation to prove anything at his trial. Defendant stated that he understood. P7

At the end of the trial, after defendant's attorney argued to the jury on his behalf, he could not be convicted of the crime charged or any related crime unless all twelve jurors agreed that his guilt had been proven beyond a reasonable doubt.  Defendant stated that he understood. P7-8

4

Instead of a jury trial, defendant could elect a nonjury trial that would take place in the same manner as a jury trial except the Judge would decide if his guilt had been proven beyond a reasonable doubt. P8

Defendant understood that by pleading guilty, defendant was giving up his right to a trial, his right to remain silent and his right not to incriminate himself with respect to the instant charges. P8 Defendant understood. P8 Defendant stated that he had discussed his guilty plea with Ms. Mungavin and her associate, Mr. Rosen and the details of what occurred in March of 2013. Defendant and his attorneys had discussed the factual and legal issues in defendant's case. P8-9 Defendant had ample time to talk to his attorneys and he was satisfied with their advice and services. P9 Based on defendant's own knowledge as to what happened as well as his conversations with defense counsel, defendant concluded that it was in his best legal interest to plead guilty today. P9

Defendant stated he was pleading guilty voluntarily. P9 He has not been threatened or forced or pressured by anyone into pleading guilty. P9-10 During the past six months, he has not been treated for any alcohol or drug abuse or undergone any counseling for any psychological or emotional problems. He is presently taking blood pressure medication on a

daily basis. He took his medication today. P10 Defendant told the Court

that he is clear-headed and understands everything that is happening. P11

The Court told defendant that in addition to the sentence to be

imposed, a felony conviction has other consequences. For example, if he

were convicted of another felony within ten years, the sentence for that

future felony would be more severe as a result of the instant conviction.

Defendant would also lose certain civil rights and a felony conviction is a

bar to obtaining certain licenses. Defendant understood. P11-12

Defendant stated he was a citizen of Jamaica. P12 He understood

there were collateral consequences to his plea. Ms. Mungavin informed the

Court that she had explained to defendant a number of times that since he

is not a United States citizen, and this is a crime of moral turpitude, it is

likely that he would be deported when he is released from prison. P12 Ms.

Mungavin also spoke to defendant's family about this consequence of his

guilty plea. P13 Defendant stated that he understood. P13

The Court reiterated to defendant that by pleading guilty to the

crime of Criminal Sexual Act in the First Degree, he would be deported. It

is a crime of moral turpitude and once he has served his prison sentence,

he will be deported. P13 The Court asked defendant if he understood, and

defendant replied, "Yes, sir." P13 The Court asked defendant whether he

still wished to plead guilty, knowing he will be deported. Defendant

replied, "Yes." P13          Defendant understood that the maximum penalty

for Criminal Sexual Act in the First is twenty-five years in prison. P13. The

Court further informed defendant that the maximum penalty for the second

count of the superseding indictment charging him with Rape in the First

Degree, is also twenty-five years. P13-14 The Court told defendant that

due to the nature of the allegations in the superseding indictment, he could

be sentenced consecutively. Defendant stated that he understood. P14

The Court stated that defense counsel and the prosecutor have had

many conferences and had a conference with the Court earlier in the day.

It was the Court's understanding that it would cap defendant's sentence at

fifteen years in prison followed by post release supervision. P14 Defendant

would also be required to register as a sex offender. Defendant understood.

P14-15

The Court stated that it would impose the agreed upon sentence

unless, after reading defendant's presentence investigation report, it

learned something that prevented it from imposing that sentence. If that

happens, the Court will allow defendant to withdraw his guilty plea and

they would begin anew. Defendant understood. P15

7

The Court further stated that if between now and sentencing, defendant (1) failed to cooperate with or misled or lied to the probation officer assigned to interview him for the pre-sentence report, or (2) committed a new offense or was arrested for a new offense, or (3) deliberately failed to appear for sentencing, the Court would not allow defendant to withdraw his guilty plea and he would be subject to a more severe sentence. P16 Defendant stated that he understood. Defendant had no questions and understood everything the Court had said so far. P16 The defendant had no questions for the Court or his attorney. P16

Defendant pleaded guilty to Criminal Sexual Act in the First Degree. He told the Court that during the day on March 3, 2013, in the Town of Hyde Park, he engaged in anal sexual conduct with YR, a person being physically helpless. P16-17 Defendant stated that there was contact between his penis and YR's anus. At the time defendant committed this crime, YR was unconscious due to the consumption of alcohol. P17 Defendant had no permission or authority to do this and YR did not consent. P17-18

The Court found that defendant had pleaded guilty knowingly and voluntarily and had admitted the essential elements of the crime of

8

Criminal Sexual Contact in the First Degree. P18 The matter was adjourned for sentencing.

C.    Defendant's Motion to Withdraw his Guilty Plea

By letter dated June 16, 2014, defendant wrote to the Court seeking to withdraw his guilty plea and requesting a new attorney. Pursuant to defendant's request, the Court relieved the Public Defender's Office from representing defendant and appointed Eric S. Shiller to represent defendant.

By Notice of Motion dated September 10, 2014, defendant moved to withdraw his guilty plea of June 11, 2014. In his affidavit submitted in support of that motion, defendant alleged that Assistant Public Defender Susan Mungavin "pressured and badgered" him to accept the People's offer and to plead guilty. He claimed he did not have a clear mind at the time he pleaded guilty and that he was coerced. Defendant further argued that he was not guilty of the charge and that he would not have waived his right to the *Huntley* Hearing and his right to a trial but for Ms. Mungavin's extreme pressure on him. The People filed an Affirmation in Answer to Defendant's motion and Mr. Shiller filed a Reply Affirmation on October 13, 2014.

9

By Decision and Order dated October 15, 2014, the County Court denied defendant's motion. The Court found that the plea minutes established defendant's guilty plea was knowingly and voluntarily entered and that defendant stated he was satisfied with his attorney's representation and advice. The Court further stated that defendant's allegations of coercion are belied by the record during the plea allocution. Moreover, defendant's assertion of innocence is belied by his sworn statement during the plea colloquy wherein he knowingly and voluntarily admitted the crime in question. See Decision and Order dated October 15, 2014 at 5-6.

D.   Defendant's Sentencing

On December 23, 2014, defendant and Mr. Shiller appeared in County Court for defendant's sentencing. Defendant signed and was served with an order of protection on behalf of YR. S2-3[2] The prosecutor read an excerpt from a letter written by the victim's mother. She wrote that she feared for her life and YR's life if the defendant is not sent to jail. Only then will they be at peace. She felt that justice required defendant, an adult, to pay the consequences of his actions so that he will not do this to

---

[2] Numbers preceded by the designation "S" refer to the pages of the transcript of the sentencing proceeding held in the Dutchess County Court on December 23, 2014.

other girls. She asked that the Court sentence defendant to fifteen years in prison followed by ten years post release supervision. S3

Defense counsel addressed the Court. He reminded the Court that it agreed to a cap of fifteen years. Defense counsel argued for some lenience for the 35 year-old defendant with no criminal record in New York State and a limited one in Florida. He noted that defendant has a loving wife and a three year-old daughter who are present in the courtroom. S4 Defendant's wife is seriously ill with a heart condition and is in bad health. Defense counsel stated that defendant maintains his innocence and that he was coerced by prior counsel into pleading guilty. Defendant admits that he was wrong to be with the two girls at the hotel and he should have left. S4-5 According to defense counsel, the only thing defendant is guilty of is "being in the wrong place at the wrong time and nothing else." S5

Defendant then addressed the Court. He stated that he is a good man and has never done anything wrong in his life. S5 He is a loving husband and father. His only intention was to help the girls and he meant no harm. He told the court that he is innocent and was forced by Ms. Mungavin to take the plea. He wanted to go to trial so the truth would come out. He is sad to think of his family and his daughter who will grow up without a father. S5-6

The Court addressed defendant. It told defendant that it would be very concerned if defendant was indeed falsely accused. The Court has handled this matter from its inception, however, and that is simply not the case. Defendant was in the wrong place because he had two young girls with him in a hotel. These girls had consumed alcohol that defendant bought for them and supplied to them and they were drunk. YR was drunk to the point of unconsciousness. The Court does not find the facts to be in dispute. According to the Court, defendant took advantage of YR because she was unconscious and this is proven beyond a reasonable doubt by the DNA evidence found on various parts of the child's body including her sexual parts, her vagina, her anus and her mouth. Defendant gave multiple versions of how that happened which the Court deemed "excruciatingly outrageous." S6-7

The Court told defendant that he was a grown man with children who could have just walked away. He did not, however, but took advantage of the situation and is now paying the price. The only reason the Court agreed to the People's offer of fifteen years was to spare the young female victims from walking into the courtroom, sitting in the witness chair, and testifying in public against defendant. S7-8 The Court believed defendant was guilty of the crime he pleaded to and that his plea was

knowingly and voluntarily entered. It was his decision to forego the *Huntley* Hearing and plead guilty. His motion to withdraw his plea was denied.

With regard to defendant's criminal record, the Court noted he had a long history of non-compliance with the law in Florida and a case in California so he is not "as innocent as the driven snow" as he would like the Court to believe. S8-9 The Court sentenced defendant on his plea to Criminal Sexual Act in the First Degree to a determinate term of fifteen years in prison plus ten years post release supervision. S9 Defendant must register as a sex offender pursuant to the Sex Offender Registration Act. S10 The Court wanted the record to reflect that defendant takes absolutely no responsibility for what he did and expresses no remorse. S10

According to the Pre-Sentence Investigation Report detailing defendant's statement about his actions on March 3, 2013, defendant told Probation Officer Pamela Francis the following:

> His friend, AP, called him and asked him for help. She wanted him to pick her up because her friend, YR, was very drunk. When he drove up to the girls, YR was on the ground covered in mud. They had no money for a cab, and the defendant offered to take them home or wherever they wanted. AP asked him to take them to a motel so that YR could sober up and not get in trouble with her mother. He took the girls to a motel and stayed with them to be sure they were

13

all right, waiting to take them home later. YR was sleeping and began to act out sexually and played with herself. According to defendant, he later masturbated in the bathroom, which is why his DNA was found on YR's vagina and anus. She had used the toilet.

PSR at 6[3]

Defendant denied buying alcohol for the girls. He said that he had

bought it earlier and it was in his truck, but then he noticed it was gone,

and he did not know which one of them took it. PSR at 6. Defendant did

not believe that his friendship with sixteen year-old AP was risky and

although he was initially sexually attracted to her, "she wasn't that type."

PSR at 6.

This appeal ensued.

## ARGUMENT

### POINT I
### THE COUNTY COURT PROPERLY DENIED APPELLANT'S MOTION TO WITHDRAW HIS GUILTY PLEA
(Answering Appellant's Point I)

Appellant argues that the County Court erred in denying his motion

to withdraw his guilty plea because it failed to recognize its own

misstatement of the sentencing law. According to appellant, the County

---

[3] Numbers preceded by the designation "PSR" refer to the pages of the transcript of the PreSentence Report prepared by Pamela Francis of the Dutchess County Probation Department on December 14, 2014.

14

Court incorrectly advised appellant at the time of his plea that he could receive consecutive sentences if convicted of the top two counts of the superseding indictment after trial. Appellant maintains that he was not subject to consecutive sentences and the court's inaccurate statement may have convinced him to plead guilty so as to avoid consecutive sentences, after trial, of up to twenty-five years on two B violent felonies.

Appellant failed to raise this allegation in his motion to withdraw his guilty plea and thus has failed to preserve the same for appellate review. See People v. Phipps, 127 A.D.3d 1500, 1501 (3d Dept. 2015). Since the County Court was never apprised of this argument, it could not respond to the same prior to sentencing appellant. Appellant alleged only that Assistant Public Defender Susan Mungavin "pressured and badgered" him to accept the People's offer and to plead guilty and that he was not guilty of the charge, claims, which were directly belied by the record of the plea proceedings.

In any event, appellant's present argument has no merit because the County Court could have legally sentenced him to consecutive terms of imprisonment if he had been convicted after trial of both Criminal Sexual Act in the First Degree and Rape in the First Degree under counts one and two of the superseding indictment.

15

According to appellant, pursuant to PL §70.25 (2), he could not have received consecutive sentences because his charges of Criminal Sexual Act in the First Degree and Rape in the First Degree were committed "through a single act or omission." To the contrary, appellant was charged with committing two separate and distinct sexual acts and thus could have been sentenced to consecutive terms of imprisonment if convicted of both sexual offenses.

Appellant was indicted for Criminal Sexual Act in the First Degree for engaging in "anal sexual conduct" with YR. See Superseding Indictment, Count One. Anal sexual conduct is defined as "contact between anus and penis." PL §130.00 (2)(b). Appellant was also indicted for Rape in the First Degree for engaging in "sexual intercourse" with YR. See Superseding Indictment, Count Two. According to the patterned criminal jury instructions for Rape in the First Degree, "sexual intercourse" means "any penetration, however slight, of the penis into the vaginal opening." See CJI2d[NY] PL §130.35(2). By definition, "anal sexual contact" and "sexual intercourse" are two separate sexual acts, constituting two distinct criminal offenses.

A trial court can legally impose consecutive sentences when each count involves a separate act constituting a distinct offense. People v.

Colon, 61 A.D.3d 772 (2d Dept.), app. denied, 13 N.Y.2d 743 (2009) (trial

court legally imposed consecutive sentences for convictions of rape in the

first degree and sexual abuse in the first degree as each count involved

separate sexual acts constituting a distinct offense); People v. Gersten, 280

A.D.2d 487 (2d Dept.), app. denied, 96 N.Y.2d 901 (2001) (court imposed

consecutive sentences for conviction of three separate acts of sodomy); see

also People v. Dallas, 31 A.D.3d 573 (2d Dept.), app. denied, 7 N.Y.3d

866 (2006); People v. White, 261 A.D.2d 653, 658 (3d Dept.), app. denied,

93 N.Y.2d 1029 (1999). Contrary to appellant's assertion, this is not a case

where the "actus reus" or the "wrongful deed that comprises the physical

component of a crime" is a "single, inseparable act" that violates more

than one statute. Cf. People v. Singh, 109 A.D.3d 1010, 1013-1014 (2d

Dept. 2013), app. denied, 23 N.Y.3d 1067 (2014).  Rather, the crimes

charged under counts one and two of the superseding indictment are

separate and distinct crimes involving separate acts of violence by

appellant against YR.

The first crime involved contact between appellant's penis and YR's

anus and the second crime involved penetration of appellant's penis into

YR's vagina. It is well settled that consecutive sentences may be imposed

where the acts of sexual intercourse and anal sex, "although part of one

17

encounter, comprise separate, distinct and independently punishable

offenses and need not be separated by any specific period of time or action

to justify the imposition of consecutive sentences." People v. Lanfair, 18

A.D.3d 1032, 1034 (3d Dept.), app. denied, 5 N.Y.3d 790 (2005). This is

the case "regardless of whether the statutory elements of the offenses

overlap." People v. Hurlbert, 81 A.D.3d 1430 (4th Dept.), app. denied, 16

N.Y.3d 896 (2011).

There is no absolute right to withdraw a guilty plea and a motion for

such relief rests within the sound discretion of the trial court. People v.

Alexander, 97 N.Y.2d 482 (2002); People v. White, 226 A.D.2d 750 (2d

Dept.), app. denied, 88 N.Y.2d 943 (1996); CPL §220.60 (3). Indeed, "[a]

defendant's request to withdraw a plea of guilty should "not be granted

merely for the asking." People v. Rossetti, 95 A.D3d 1362 (2d Dept.

2012), citing People v. Alexander, 97 N.Y.2d at 485. And, a trial court's

decision to deny a defendant's motion to withdraw his or her guilty plea

should not be disturbed on appeal absent an abuse of discretion. People v.

Jacob, 94 A.D.3d 1142, 1143 (2d Dept.), app. denied, 19 N.Y.3d 962

(2012); People v. Smith, 54 A.D.3d 879, 879 (2d Dept.), app. denied, 2008

N.Y. LEXIS 4296 (2008).

The County Court did not abuse its discretion in denying appellant's motion to withdraw his plea after it considered and rejected appellant's claim of coercion and factual innocence. The Court found that the plea minutes established defendant's guilty plea was knowingly and voluntarily entered and that defendant stated he was satisfied with his attorney's representation and advice. The Court further stated that appellant's allegations of coercion and assertion of innocence were belied by the record and his sworn statement during the plea colloquy wherein he knowingly and voluntarily admitted the crime in question. See Decision and Order dated October 15, 2014 at 5-6. For these reasons, appellant's conviction should be affirmed.

POINT II

APPELLANT RECEIVED THE EFFECTIVE ASSISTANCE OF COUNSEL

(Answering Appellant's Point II)

Next, appellant claims that he was denied the effective assistance of counsel because his attorney at the plea hearing failed to recognize and/or argue that the County Court gave appellant incorrect sentencing advice. As addressed in Point I, *supra*, the County Court properly advised appellant that he was subject to consecutive sentences of up to twenty-five years if he was convicted, after trial, of the top two counts of the superseding indictment. Accordingly, the instant claim of ineffectiveness of counsel

19

has no merit as there was no basis for defense counsel to object to the

County Court's proper legal advice.

Under the federal standard, a defendant must demonstrate that his

attorney's performance failed to meet an objective standard of

reasonableness and that, but for counsel's error, a reasonable probability

exists that the result of the proceeding would have been different.

Strickland v. Washington, 466 U.S. 668, 688-694 (1984). Under New

York law, a claim of ineffective assistance of counsel will be sustained

only when it is shown that counsel partook "an inexplicably prejudicial

course." People v. Zaborski, 69 N.Y.2d 863, 865 (1983); People v.

Benevento, 91 N.Y.2d 708, 713 (1998).  The well-established measure is

whether "the evidence, the law, and the circumstances of a particular case,

viewed in totality and as of the time of the representation, reveal that the

attorney provided meaningful representation." People v. Baldi, 54 N.Y.2d

137, 147 (1981); People v. Henry, 95 N.Y.2d 563, 565 (2000).

"'[C]ounsel's efforts should not be second-guessed with the clarity of

hindsight' and . . . our Constitution 'guarantees the accused a fair trial, not

necessarily a perfect one.'" People v. Turner, 5 N.Y.3d 476, 480 (2005),

quoting People v. Benevento, 91 N.Y.2d at 712.

There is nothing in the record to suggest that appellant was deprived of effective assistance of counsel under either the federal or New York standards. Appellant received an advantageous sentence in exchange for his guilty plea. Moreover, at the time of his plea, appellant unequivocally expressed his understanding of the terms of the plea agreement as well as his satisfaction with his attorney. And, he confirmed to the Court that he had not been threatened or coerced into pleading guilty by anyone. P8-9 He then knowingly and voluntarily admitted committing the crime of Criminal Sexual Act in the First Degree. P16-18 Lastly, the County Court correctly advised appellant that he was subject to consecutive sentences if convicted of both Criminal Sexual Act in the First Degree and Rape in the First Degree. See People v. Colon, 61 A.D.3d at 772; People v. Gersten, 280 A.D.2d at 487; People v. Dallas, 31 A.D.3d at 573; People v. White, 261 A.D.2d at 658. The record established that by pleading guilty to count one of the superseding indictment with an agreed upon sentence of fifteen years, appellant avoided the possibility of a much lengthier sentence after trial.

In sum, the record establishes defense counsel provided meaningful representation with respect to appellant's plea of guilty. People v. Ford, 86

N.Y.2d 397, 404 (1995); People v. Anthoulis, 78 A.D.3d 854 (2d Dept.

2010), app. denied, 16 N.Y.3d 827 (2011).

POINT III
APPELLANT'S AGREED UPON SENTENCE WAS MOST
APPROPRIATE
(Answering Appellant's Point III)

Appellant claims that his determinate sentence of fifteen years in

prison followed by ten years post release supervision was harsh and

excessive and this Court should modify the sentence by reducing it.

Appellant cannot be heard to complain that his prison sentence was

excessive since it was an agreed upon sentence pursuant to a negotiated

plea bargain. People v. Domin, 13 A.D.3d 391, 392 (2d Dept. 2004), app.

denied, 4 N.Y.3d 830 (2005); People v. Campbell, 69 A.D.3d 645, 645 (2d

Dept.), app. denied, 15 N.Y.3d 748 (2010); People v. Foy, 89 A.D.3d 1103

(2d Dept. 2011), app. denied, 18 N.Y.3d 924 (2012).

Since appellant pleaded guilty with the express understanding that

he would be sentenced to fifteen years in prison, and he in fact was

sentenced to fifteen years, he has no basis to complain that his sentence

was excessive. People v. Domin, 13 A.D.3d at 392.

The sentencing decision is a matter committed to the sound

discretion of the trial court.  People v. Farrar, 52 N.Y.2d 302, 305 (1981);

People v. Suitte, 90 A.D.2d 83 (2d Dept. 1982); People v. Notey, 72

A.D.2d 279, 282 (2d Dept. 1980). The trial court's determination of the kinds and limits of punishment should be afforded high respect on appeal absent an abuse of discretion. People v. Suitte, 90 A.D.2d at 85-86. Sentencing involves consideration of the crimes charged, the particular circumstances of the offender, and the purposes of a penal sanction. Id. at 83. In fashioning an appropriate sentence, the Court should keep in mind the four principle objectives of criminal punishment, to wit: deterrence, rehabilitation, retribution and isolation. People v. Notey, 72 A.D.2d at 282. "It is the sensitive balancing of these criteria in the individual case that makes the process of sentencing the most difficult and delicate decision that a Judge is called upon to perform." Id. at 283. Moreover, since a reviewing court lacks some of the first-hand knowledge of the case that the sentencing Judge is in a position to obtain, the trial judge's decision should be afforded high respect on appeal. Id. at 282.

Although an intermediate appellate court may modify a sentence that is unduly harsh or severe, People v. Delgado, 80 N.Y.2d 780, 783 (1992); People v. Thompson, 60 N.Y.2d 513, 519 (1983), there is no need for such sentence-review power here where the sentence meted out was part of a negotiated plea agreement and no extraordinary circumstances exist to warrant its modification on appeal.

Appellant's sentence was within the statutory guidelines and was thus legal. Having been convicted of the Class B violent felony of Criminal Sexual Act in the First Degree, defendant's determinate sentence of fifteen years in prison followed by ten years post release supervision was permissible. PL §70.80 (1)(b) & (4)(a)(i) & PL §70.45 (2-a), (c). Appellant faced a maximum sentence of twenty-five years but received a lesser sentence. PL §70.80 (4)(a)(i).

Moreover, appellant's sentence was fair. See People v. Hurlbert, 81 A.D.3d at 1432 (consecutive determinate sentences of 15 years on the rape and sexual act counts not excessive); People v. Singh, 109 A.D.3d at 1010-1011 (reviewing court modified defendant's determinate sentences of 17 ½ years on his rape in the first degree and criminal sexual act in the first degree convictions reduced to 15 years); People v. Cruz, 92 A.D.3d 1138 (3d Dept.), lv. denied, 19 N.Y.3d 863 (2012) (sentence of 18 years for conviction of criminal sexual act in the first degree); People v. Lancaster, 121 A.D.3d 1301 (3d Dept.), lv. denied, 24 N.Y.3d 1121 (2015) (appellant's sentence of 18 years plus 10 years post release supervision on conviction of criminal sexual act in the first degree not excessive).

The record established that the 35 year-old appellant took advantage of the 16 year-old victim by providing her with alcohol, which she drank

to the point of becoming unconscious. Appellant then drove her to a motel

where he removed her clothing and subjected to contact between his penis

and her vagina, his penis and her anus and his penis and her mouth for the

purpose of his own sexual gratification. The victim remained unconscious

during these criminal sexual acts and was thus incapable of consenting to

the same. The DNA evidence substantiated these sexual acts.

Notwithstanding this evidence, appellant denied committing the crime and

said he was merely in the wrong place at the wrong time. The Court noted

that he showed no remorse for the victim.

The Court stated that the only reason it had agreed to the People's

offer of fifteen years was to spare the young female victims from walking

into the courtroom, sitting in the witness chair, and testifying in public

against defendant. S7-8 The Court believed appellant was guilty of the

crime he pleaded to and that his plea was knowingly and voluntarily

entered. S8 Given the nature of appellant's crime, the fact that the agreed

upon sentence was less than the maximum allowable and there are no

extraordinary circumstances to warrant a modification of the sentence

imposed, this Court should not disturb appellant's sentence.

25

## CONCLUSION

WHEREFORE, for all the foregoing reasons, Respondent

respectfully requests that the judgment of conviction be, in all respects,

affirmed.

Dated:  July 23, 2015

                              Respectfully submitted,
                              WILLIAM V. GRADY
                              Dutchess County District Attorney
                              Attorney for Respondent
                              236 Main Street
                              Poughkeepsie, New York 12601
                              (845) 486-2300


BY:    KIRSTEN A. RAPPLEYEA
       Assistant District Attorney
       Of Counsel

## CERTIFICATION OF COMPLIANCE

Pursuant to 22 NYCRR §670.10.3 (F)

The foregoing brief was prepared on a computer. A

proportionally spaced typeface was used, as follows:

> Name of typeface: Times New Roman
> Point size:           14
> Line spacing:        Double Spaced
> Margins:            1 ½" on left and 1"on top,
> bottom and right side

The total number of words in the brief, inclusive of point

headings and footnotes and exclusive of pages containing the table of

contents, table of citations, proof of service, certificate of compliance, or

any authorized addendum containing statutes, rules, regulations, etc. is.

5,645.

_____

Laurie Fricchione, Typist

11

| People v Gabbidon |
| :---: |
| 2015 NY Slip Op 08857 [134 AD3d 736] |
| December 2, 2015 |
| Appellate Division, Second Department |
| Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431. |
| As corrected through Wednesday, February 10, 2016 |

[*1]

| The People of the State of New York, Respondent,<br>v<br>Craig E. Gabbidon, Appellant. |
| :---: |

Del Atwell, East Hampton, N.Y., for appellant.

William V. Grady, District Attorney, Poughkeepsie, N.Y. (Kirsten A. Rappleyea of counsel), for respondent.

Appeal by the defendant from a judgment of the County Court, Dutchess County (Greller, J.), rendered December 23, 2014, convicting him of criminal sexual act in the first degree, upon his plea of guilty, and imposing sentence.

Ordered that the judgment is affirmed.

The defendant's contention that the County Court misinformed him of his maximum sentencing exposure were he to proceed to trial is unpreserved for appellate review, since the defendant did not raise this specific ground in his motion to withdraw his plea (*see People v Williams*, 129 AD3d 1000 [2015]; *People v King*, 115 AD3d 986 [2014]; *People v Delarosa*, 104 AD3d 956 [2013]). In any event, the court properly informed the defendant that consecutive sentences could be imposed if he were convicted of the first two counts of the indictment, since each count as charged involved a separate sexual act constituting a distinct offense (*see People v Colon*, 61 AD3d 772, 773 [2009]; *People v Dallas*, 31 AD3d 573, 574 [2006]; *People v Gersten*, 280 AD2d 487 [2001]).

Contrary to the defendant's contention, he was not deprived of the effective assistance of counsel due to his counsel's failure to recognize and address the purported error regarding his maximum sentencing exposure, since, as noted above, the County Court properly informed the defendant of his maximum sentencing exposure (*see People v Cromwell*, 99 AD3d 1017 [2012]; *People v Royster*, 40 AD3d 885, 886 [2007]). Furthermore, the record demonstrates that the

defendant received an advantageous plea, and nothing in the record casts doubt on the apparent effectiveness of counsel (*see People v Ford*, 86 NY2d 397, 404 [1995]; *People v Modica*, 64 NY2d 828, 829 [1985]; *People v Baldi*, 54 NY2d 137, 147 [1981]). There is nothing in the record to support the defendant's claim that counsel's performance was deficient (*see Hill v Lockhart*, 474 US 52, 58 [1985]; *Strickland v Washington*, 466 US 668, 687 [1984]).

The sentence imposed was not excessive (*see People v Suitte*, 90 AD2d 80 [1982]). Mastro, J.P., Hall, Sgroi and Duffy, JJ., concur.